The focus of this appeal today really comes down to one issue, and it's a legal issue purely regarding the interpretation of a contract. And that issue is whether the Termination for Convenience Clause in HUD Form 5370, Clause 34, allows a party to recover attorney's fees, litigation attorney's fees, for litigating its termination claim against the Public Housing Authority. In this case, the District Court concluded that Clause 34 of the HUD form allows for recovery of litigation expenses because the clause does not, in the Court's view, quote, unambiguously exclude, close quote, such fees. So it was on that basis that the District Court awarded Liberty Mutual the surety in this company, in this case, over half a million dollars in litigation attorney's fees for litigating its claims against Hano, its termination claim against Hano for about four years. Is Hano's position that the District Court committed legal error in awarding such fees and misapplying Clause 34 to expand Hano's potential liability for costs beyond the strict requirements of Clause 34? I think it's undisputed that Clause 34 is clear and unambiguous. I think in Liberty's brief, it essentially concedes that this language is clear and unambiguous. Clause 34b4 specifically provides that in the event of a termination for convenience, which is what the District Court determined here, Hano shall be liable for the actual or estimated cost of legal and accounting services reasonably necessary to prepare and present the termination claim to the Public Housing Authority. How did the District Court read that in such a way as to allow litigation expenses? Well, that's the question. It doesn't. What did it say? I mean, what did the District Court say? How did it try to justify its ruling in the light of that limiting language? Well, as I said earlier, the District Court's reasoning was that litigation attorney's fees were included because they were not unambiguously excluded. So because they were not clearly excluded, the Court permitted them to be included and thereby expanded the liability of the Housing Authority. And that's what brings us here today. But nowhere in that language, Judge Jolly, nowhere in that language or any other clause in the general conditions of the HUD contract or any other contract between these two. prevailing party in enforcing the contract. I mean, those fees have got to come from a contractual provision or provision of state law somewhere. And I didn't see it was certainly not in the contract, not in state law. I don't know where he thought they were entitled to litigating expenses. Well, I wouldn't expect that. Clause 34B-4 has to be read in context. Clause 34B-4 is essentially one category of recoverable costs, which are legal or accounting expenses that would be necessary to essentially prepare and calculate the other costs that are provided for in that Termination of Convenience Clause. The District Court's decision made no mention of those other categories of costs. The Court only focused on that one category, which were the legal expenses necessary or reasonably necessary to prepare the claim. But there are other costs that are part of that provision that are elements of the damages that are allowable for a Termination of Convenience. And that's what B-4 is focused on calculating, the cost of gathering and calculating those other costs, not litigating the termination claim over a period of four years with the Housing Authority, which is what Liberty is. I believe that 34 is preceded by 31, I believe. That's correct. 31 lays out that if there are any disputes in this, between the parties in this agreement, you have to present it to the contracting officer. Correct. And in that connection, I mean, that's where the litigating fees or accounting fees, as you referred to, are tied directly to 31. I don't believe so, Judge Alder. I think that the fees that are specified in 34 are only for costs associated with the termination of convenience. If it's later determined that the contractor . . . on the same terms as I read the contract, isn't that right? That would be an option. If there's an error, then I can either reinstate the rights of the contracting party, or the contracting party can, at that point, go to court. But what 32 says . . . Clause 32 is the clause for default. Clause 32C says that if, after termination of the contractor's right to proceed, it is determined that the contractor was not in default, or that the delay was excusable, then the rights and obligations of the parties will be the same as if the termination had been for convenience by the Public Housing Authority. So, that is the provision that triggers Clause 34, which is the termination for convenience clause, that then allows the contractor to make a claim for those recoverable costs under 34. Liberty didn't even make that claim. They didn't make a claim for any of those recoverable costs under 34. Although, their argument is that to do so would have been a vain and useless act, because Hano contested that it had even terminated Liberty. But it's clear in their brief, and I think the record is clear, that at all times, Liberty felt as though it had been terminated. And if they felt they had been terminated, then it would have been their obligation to make a claim under the termination for convenience clause. They chose not to do that. Instead, they chose to file litigation. In fact, the joint litigation had already been pending by the contractor, their completion contractor against Hano, prior to Liberty's involvement in this case from the beginning. So, they chose to intervene. They filed a complaint, September 1, 2016. On September 22, 2016, Hano answered that complaint. So, as we see it, if there was any claim at all made for a termination for convenience, it was made at the time of that complaint of intervention. What does it mean to terminate for convenience? That simply, I think it's a legal fiction, but it simply means that the termination was made by the housing authority for the benefit of the housing authority. And in this case, Hano moved to a different contractor to finish the project, because of its issues with Liberty and its completion contractor. So, another contractor was brought in to finish the project. So, to that extent, the legal fiction would suggest that it was to Hano's convenience to bring in a new contractor to accomplish its objectives. And so, under clause 34, if that, in fact, is what's determined, and in fact, that's what the district court determined here, that Hano's termination of Liberty and its contractor was for Hano's convenience. So, in that event, they are specifically provided for costs that are recoverable under clause 34 as a termination for convenience claim. And it's our position, Hano's position, is that Liberty was obligated to make that claim, and it did not do so. So, in truth, it's not entitled to any of these recoverable costs, because it never made the claim. So, that means we don't need to remand for calculation of the correct amounts?  We don't need to remand for calculation of the correct amounts, because it wasn't timely with the correct amounts under 34? Is that right? They didn't make a claim for those costs. It's not part of the record. Okay. So, we should not remand and say, well, you've awarded costs that you're not supposed to award, but there are costs that you could have awarded. Right. You don't want us to remand that. Right. That would be our position, that it should not be remanded for those costs, because that claim was never made for those costs. Well, it seems to me that Liberty never encouraged the costs that are referred to here, and that is for the expenses for resolving the contractual dispute, accounting and legal fees that would allow it to present its claim to the contracting officer to settle the dispute. That's what it would be provided, the fees that are provided specifically, and that event never occurred. It never occurred. It seems to me there are no litigation fees involved in this case at all. There are none involved, Justice Yawley, and there are none provided for in the contract. There are no provisions in any of these contracts that provides for litigation attorney fees. Well, and they incurred no costs for legal and accounting services that are necessary to prepare and present the termination claim to TANF. It never happened. I agree with you. Do you have anything else? Again, the only other alternative way to look at this is the alternative that, to the extent that they prepared a claim, and that claim amounted to the complaint and intervention, the only fees that would be due would be the fees and expenses necessary to prepare that complaint and intervention. But there was no complaint? There was a complaint filed. Not in—it was an actual complaint as a lawsuit? Correct. That's not the right kind of complaint? Correct. Okay. I'll reserve my remaining time for rebuttal.  We appreciate it, Mr. Butler. We'll hear from Mr. Krebs now. And for some reason, the case is styled upside down. I called—it said Liberty Mutual versus Housing Authority. Really, that's Housing Authority versus Liberty Mutual, and y'all came up correctly. So that's—it's just on the sheet wrong. Good morning. May it please the Court, David Krebs for Liberty Mutual Insurance. We have all been raised on the American rule. I understand the American rule. Judge Barbier understands the American rule. The first point I would like to make, particularly in light of some of the questions from the Court, is that this contract provides for the recovery of fees. It provides for the recovery of attorney's fees. The issue is the scope of those fees. Clause 34, Item 4, provides for the recovery of attorney's fees. Now— Read me that language that you're— Yes, sir. —leading on now. I see neither the word—nor the word fees. The language, Judge Jolly, is the actual or estimated cost of legal and accounting services reasonably necessary to prepare and present the termination claim to the public housing authority. Okay. You want to answer, Judge— Oh, I'm sorry, Judge Oldham. I didn't hear. That's quite all right. I don't see the word attorney or fees in that clause. No, Your Honor. What it says is legal services. To do what? To prepare and present a claim to the public housing authority. So is it your position that by serving them with a complaint and intervention, you served them with a—you have presented the termination claim to the PHA? That is exactly my position, Your Honor. And it is supported by the contract. It is supported by Clause 31, which says the claim is a demand in writing. That was a demand in writing. It was not submitted to Hannah's contracting officer, though. It was not, Your Honor. It was not. That's a requirement, isn't it? It is a requirement under Clause 31, but I will say two things to that. The first is that, as set forth in our brief, the Judge Barbier found that that performance was excused. He found that in the underlying case, which was appealed and decided by this court. It is my position, Your Honors, that compliance with Clause 31, which is the disputes clause, that that ship has sailed. That was addressed. That was adjudicated. It was appealed, and it was affirmed by this court. Run that back for me again. Yes, sir, Your Honor. It is my position that compliance with Clause 31, which is the disputes clause, and says, among other things, that disputes will be submitted to the contracting officer, that that entire issue has been adjudicated in the underlying case, which was appealed and affirmed by this court. How is it adjudicated and affirmed in your interest, Your Honor? How were the issues that are here resolved in that litigation? Tell me again what the basis of your reasoning is. The issue which was not resolved in this suit, the only thing in this appeal, because it was kicked back by the prior panel, was the issue of entitlement to attorney's fees, which in our position is under Item 4 of Clause 34. The entire issue of contracting officer, of compliance with those clauses, was raised in the appeal below of the underlying case. And, in fact, I stood at this podium and dealt with very direct, difficult, and sharp questions from Judge Jones on that very issue. And this court affirmed. This court affirmed. This court affirmed that the claim by Liberty Mutual, and for that matter Parkcrest, that it had not abandoned the work, but that it had been improperly terminated, and that, as a result, under this contract, it was entitled to damages for termination for convenience under 34. One of the defenses was we had not followed the Disputes Act, and the judge, Judge Barbier, said, No, that was – I'm not sure it was waived, or I want to say it was waived, but I think he said excused. And in the reasons for judgment, on the attorney's fees, he goes back to that, and he says this is decided. This performance was excused. So what I would say is the whole business – and this gets Judge Elrod to your issue on remand. God forbid should we get there. But the whole issue of compliance with contracting officer is a red herring. It has been decided by this – by the court below and affirmed by this court that Liberty's claim was proper and that it is entitled to damages under Clause 34, and that is what is before this court. Is there a specific ruling on that issue, or is it implicit in the remand?  Not implicit in the remand. It was – you would have to go, Your Honor, to the findings of fact and conclusions of the law, the 85 pages Judge Barbier did, because then the Fifth Circuit's decision was quite short, and they said we affirm essentially for the reasons given, essentially for the reasons given by Judge Barbier. But it does not affirm attorney's fees, which is why we're here. It specifically carves that out and says that Hano's appeal designates this award as error, and we previously held that an order awarding attorney's fees and costs is not reviewable until the award is reduced to some certain. And because it wasn't reduced to some certain, they lacked jurisdiction to decide whether or not there was an entitlement to fees. Yes, ma'am. And so we have never blessed fees. We have never said no fees. We just have said we didn't have jurisdiction over fees. No, ma'am. That's correct. I accept that. I agree with that. But my point is this. The issue before this court is not the entitlement on the overall claim, the overarching claim. The issue on the court is whether the award of attorney's fees by Judge Barbier falls within item four of clause 34. But we put to one side all of the arguments on attorney's fees in our prior, albeit very short, decision. Yes, ma'am. So whether or not they are looped, there's no entitlement to attorney's fees that's been established. No, ma'am. I agree. I agree with the court. So we can look to see what is the basis for attorney's fees. It's not just the amount. It's the amount that triggered the fact that we lack jurisdiction. But we've never said that the basis has been established for the fees. So we get to look at the contract provision to see if the contract provision allows fees. Yes, ma'am. And that is the question before you. What I don't think this court should do, I think would be improper, because as I said, I think that ship has sailed, is revisit the issue of compliance with the contracting officer issue that has already been argued and decided. Counselor? What you're arguing, it seems to me, is the law of the case. And if you're arguing the law of the case, that is, the issue has already been decided, tell me precisely what is the law of the case in this matter? The law of the case is that compliance with the provisions of Clause 31 were either waived or excused. As to the claim for breach? As to Liberty's claim. Here's the problem that you run into. Let's not talk about 31. Let's just concede, for the sake of argument, let's just agree that that's decided in the first appeal. You just want us to focus on the text of Clause 34, because that's the basis of your fee claim. And Clause 34D specifically and expressly says, and I quote, Any disputes with regard to this clause, that is 34, are expressly made subject to the provisions of the disputes clause of this contract. So you can be right about every single thing you've said in the first 11 minutes of your argument, but you still have to deal with the fact that you never, your client, never made a claim to the contracting officer in the disputes clause, because it's referenced and cross-referenced expressly in 34D. Yes, Your Honor. And I have a response to that, too. But the attorney's fee issue was not the only issue before the court, before the trial court, and then before the Fifth Circuit. In determining, I guess, Your Honor, it comes down to how you parse the word claim, right? Because at the end of the day, in my view, the claim that we presented was that we had been improperly terminated, that we had not abandoned the project, we had been terminated, right? And that we were entitled to the damages under Rule 34, under Clause 34, as a result. Now, what I think what Hannah would like to do— You framed it exactly right. And the question is whether you are entitled to all of your litigation expenses that resulted in a judgment in your favor under Rule 34 for that accomplishment. That is where I'm trying to go. I do believe—that is what I want to argue. I do believe that— If we would let you. Judge, by all means, I want to answer your questions. I really do want to answer your questions. But the current of my argument is that Articles 31 is a disputes clause, that that was raised in the initial litigation, that liability was established, and that we are talking about our damages recoverable under Clause 34 at this point. And I agree with the judge that 34 is made dependent on 31, but that was decided below. That was decided and affirmed by this court, that compliance was excused. You can have compliance excused with a disputes clause. That makes sense. I understand, you know, agree or disagree with the prior panel opinion. I understand what you're saying. But you still have to get back to the fact that you're asking us to read Clause 34 before for the legal services reasonably necessary to prepare and present the termination claim to the PHA to cover something that both never happened, because it was never presented to the PHA within the terms of this clause, and it has to be broader than just the amount of presenting the claim. You want us to both present the claim, litigate the claim, two circuits—two trips to the Fifth Circuit with the claim. It's just not what the parties agreed to, right? The parties agreed to this relatively modest provision that said presentation of the claim, not multiple rounds of federal court litigation of the claim. Agreed. That is exactly what I'm asking you to do. And it is a—I get that I'm pushing a rock up a hill. That's a big ask. But it is supported by the contract. It is supported by the law. But I don't think it's supported by the reasoning given by the district court, though, do you? They said it was because of bad faith, that that's the reason in some case that they side regarding bad faith. You're not relying on that, are you? I am in a sense, and I will address that. But that is not—so I invited Judge Barbier to walk down that road with me and to find bad faith and award prevailing party fees on that basis. And he declined. He went instead on here. But he did find an abuse of discretion. Abuse of discretion is a term that has real meaning in the context of the termination for convenience clause, the conversion of a default to the termination for convenience. And it is not something that I think should be treated lightly. Judge Barbier is an experienced, sober, level district judge. And he found here an abuse of discretion which under the rules, under the case law rather, is almost tantamount to bad faith. The courts kind of shrink from actually saying that. But here's the point. Here is what—here again is the kernel of the argument and why I say to you that Judge Barbier is correct in his—it ought to be reviewed on manifest error. The—we were not awarded prevailing party fees. Had we been awarded prevailing party fees, we would have gotten 90% instead of less than 50%. We were awarded fees relating to—under Judge Barbier's decision and under his reasoning relating to the term—the preparation and presentation of the termination claim. And what he found is—he found, as a matter of fact, that the fees were related to that and that the fees were reasonable, the amount that he awarded. So in order to get past that, Your Honors, you have to find a legal impediment to his awarding that. And there is no legal impediment and there is no contractual impediment, which we've set forth more in the brief in which I don't have time now to get into. But— There's no legal impediment that it's not provided for as a matter of law because we have the American rule. And it's no contractual—there's a contractual impediment because it's beyond the scope of fees that are allowed by the terms of the contract. I guess that's—that would be the response to what you just said. Yes, ma'am. And I would—and I would—I would differ from the reading of the American rule since there are attorney's fees provided for. And I would concede to you the issue of is this within the scope. And forgive me. You know you're getting old as a lawyer when you interrupt a judge. So the question is whether these exceed the scope because the judge found they were related to presentation of the termination clause—of the termination claim. And so here, Your Honor, is where the abuse of discretion comes in. And I don't think that I need this except if the court is inclined to follow the rule that was set forth by the Ohio Court of Appeals in Peterson, which is something that Judge Barbier directly addressed and rejected. The termination for convenience. Judge, you asked about—Judge O'Jolly, you asked about termination for convenience. Termination for convenience came about during the—after the Civil War so that the federal government could get rid of all of these expensive contracts they had where they no longer needed, you know, what they needed to outfit the Army of the Potomac. And so it got embedded in the federal law at that point, and then we got to the point where there was a conversion of default and determination of convenience absent a abuse of discretion or bad faith that the public authority had the right to be wrong, and it could contractually limit its exposure to termination for convenience damages. The—this is the language that was quoted by Judge Barbier, and it's from Peterson, the Ohio Court of Appeal. Nevertheless, after reading many cases, we believe that bad faith and clear abuse of discretion should limit an agency's ability to originally terminate a contract for convenience as well as its later reliance on contractual clauses allowing conversion of default termination. Your Honors, what the judge found was that there was a willful refusal by the public housing authority—this is implicit in his ruling— to allow us to present a termination claim and that the only way to present the termination claim was through litigation. He didn't even try. How do you know that you could not have been heard? He didn't even try. I'm out of time. Can I answer, Judge, or shall I leave on that? You may answer. I want to leave on that. I was half hoping you would say I could leave on that, Judge. The—it would have been—what we say in the brief, and it's true, is it would have been useless. It would have been a useless act. The evening before the trial, Hano still was claiming we abandoned the project. What is the point of presenting a claim when the parties—when the party will not even consider the possibility that a termination existed? And that's what Judge Barbier found at the end of the day. And that's why I think this is a particular case. You won on that bet except for attorneys' fees. I mean, you won. You won the legal position, the position you were asserting or that you would have asserted before the contract notice. We did, Your Honor. But that subjected you to the American rule. We did, Your Honor. And as I said, I don't disagree that we're subject to the American rule. I'm relying on the contract. And thank you for your patience, Judge. Thank you. We have your argument, Mr. Krebs. Thank you. Thank you. Mr. Butler, do you have anything for rebuttal? Just briefly. Judge Jolly had asked earlier the reasoning for Judge Barbier's decision to include litigation attorney fees in the 34B4 recovery. And again, I restate, Judge Barbier simply said that because it was not unambiguously excluded, then it was allowed. That was his reasoning. And again, I offer that for what it says, which we believe is clear error and is a misapplication of that provision. We did cite, just in closing, the Calvore case, Calvore v. United States, Calvore Court, which is a federal court of claims case where very similar termination language was at issue there, and a limited scope of cost recovery, and a plaintiff who was determined to have been constructively terminated by the court. And that plaintiff also had no opportunity to engage in the administrative settlement process that was provided for in that termination of convenience provision. Just like here. But there the court simply said that the plaintiff would be allowed to recover only those legal expenses that were incurred to file a legal brief to assert those costs. And we're saying the same thing here. That Liberty, if they're entitled to anything, we don't believe they're entitled to any cost recovery because they didn't make the claim, but if they're entitled to anything, they're entitled only to the expenses that were incurred to file their complaint in the court that asserted the cost that they otherwise would have been allowed to recover under 34B. I don't give away your case. Well, I only offer it as an alternative. You're winning. You better not lose it. Thank you. Any questions? Thank you, sir. We have your argument. Thank you. Thank you to our counsel. This case is submitted.